b

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| LESHONDA CEPHAS,<br>Plaintiff | CIVIL DOCKET NO. 1:23-CV-01754 |
| VERSUS | DISTRICT JUDGE DRELL |
| NATCHITOCHES NURSING &<br>REHABILITATION CENTER,<br>L.L.C., ET AL.,<br>Defendants | MAGISTRATE JUDGE PEREZ-MONTES |

REPORT AND RECOMMENDATION

Plaintiff Leshonda Cephas ("Cephas") filed a Motion to File First Supplemental and Amending Complaint. ECF No. 21. Defendant Natchitoches Nursing & Rehabilitation Center, L.L.C. ("NNRC") opposes that motion.

Because Cephas's Motion to Amend (ECF No. 21) should be GRANTED pursuant to Rule 15 and 28 U.S.C. § 1447(e), and this case should be REMANDED for lack of subject matter jurisdiction.

I. Background

Cephas filed a Petition in state court against NNRC, its unnamed liability insurer, and an unnamed employee ("Jane Doe") pursuant to La. R.S. 40:2010.8, the Louisiana Nursing Home Resident Bill of Rights Act ("NHRBRA"). Cephas, who is paralyzed from the waist down, has been a resident at NNRC since 2020. Cephas uses a wheelchair to move around, is incontinent, and is dependent upon others to assist her in caring for her daily needs.

Cephas depended on the NNRC employees to turn, rotate, and reposition her in her bed regularly and to change her diaper every two hours. Cephas contends the NNRC and its administration, staff, and medical professionals left her sitting in feces and urine, without changing or turning her. Cephas developed bed sores and stage 4 pressure ulcers on her buttocks and right foot. Those pressure ulcers became septic and she developed osteomyelitis. Cephas spent a month in the hospital in early 2023, where necrotic tissue was removed to the bone. ECF No. 1-2 at ¶ 10. Cephas was discharged back to NNRC, where she developed the same condition again, and in mid-2023 was hospitalized again. ECF No. 1-2 at ¶ 11.

Cephas asserts claims for:

- failure to provide adequate health care and services;

- failure to provide privacy in treatment and caring for Cephas's personal needs;

- failure to treat Cephas courteously, fairly, and with dignity;

- failure to afford Cephas the attention and care to which she was entitled;

- failure to monitor, supervise, and attend to Cephas;

- failure to properly and timely assess and reassess Cephas' risk of developing pressure sores and ulcers;

- failure to timely and adequately clean and change her, and turn, rotate, and reposition her;

- failure to consult appropriate supervising physicians or specialists in her treatment;

- failure to develop and modify a plan of care to meet Cephas's needs;

- failure to provide prompt and aggressive medical care for Cephas;

- failure to properly diagnose and treat Cephas;

- failure to take all reasonable and necessary steps to protect Cephas from worsening health or injury;

- failure to render proper services and health care treatment to prevent dehydration and pressure sores;

- failure to use reasonable care and diligence;

- failure to adequately staff the NNRC;

- failure to take timely, proper, and effective actions to evaluate, diagnose, monitor, and treat Cephas;

- failure to properly supervise and train employees;

- failure to consult and review shift documentation regarding standard preventative care for Cephas; and

- vicarious or *respondeat superior* liability for the NNRC medical staff and other employees.

ECF No. 1-2 at ¶ 17. Cephas seeks monetary damages.

NNRC removed, asserting diversity jurisdiction.[1] ECF No. 1. NNRC then answered (ECF No. 15) and filed a Motion for Summary Judgment (ECF No. 17).

---

[1] Cephas is a resident and citizen of Louisiana. ECF No. 11.

NNRC is a limited liability company. Its members are D&N, L.L.C. and DTD HC, L.L.C. NNRC is a citizen of New York, as set forth below:

> The members of D&N, L.L.C. are Norbert Bennett, a citizen of New York; the Norbert A. Bennett Children's Trust, the trustee of which is Ronald Bennett, a citizen of New York; and the Norbert A. Bennett Grand-Children's Trust, the trustee of which is also Ronald Bennett.

3

Cephas filed a Motion to Amend Complaint (ECF No. 21), seeking to substitute four non-diverse defendants for "Jane Doe." NNRC opposes that motion. ECF No. 25.

## II. Law and Analysis

Cephas seeks to substitute the names of 4 NNRC employees for "Jane Doe": Susan Menard ("Menard"), the Executive Director or Administrator of NNRC in charge of overseeing and managing day-to-day operations at NNRC; and three NNRC employees who caused or contributed to Cephas's injuries – Tycianna Caldwell ("Caldwell") (an L.P.N.), Jena Brazil ("Brazil") (an R.N.), and Jacquiline Pouncy ("Pouncy") (an R.N. and head of nursing at NNRC). ECF No. 21. Cephas contends all four proposed Defendants are citizens of Louisiana. NNRC contends, however, that the purpose of Cephas's Motion is to destroy diversity. ECF No. 25.

Federal courts have limited subject matter jurisdiction and cannot entertain cases unless authorized by the Constitution and legislation. *See Coury v. Prot*, 85 F.3d 244, 248 (5th Cir. 1996). There is a presumption against subject matter jurisdiction, which must be rebutted by the party bringing an action to federal court. *See Coury*, 85 F.3d at 248. The party seeking to invoke the jurisdiction of the federal

---

The members of DTD HC, L.L.C. are Donald T. Denz, a citizen of New York, and the Donald T. Denz Irrevocable Trust, the trustee of which is Martin J. Clifford, a citizen of New York.

court has the burden of proving that jurisdiction exists. *See Aetna Cas. & Sur. Co. v. Hillman*, 796 F.2d 770, 775 (5th Cir. 1986).

The general-diversity statute permits federal district court jurisdiction over suits for more than $75,000 between citizens of different States. *See* 28 U.S.C. § 1332(a); *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996); *Stangel v. A-1 Freeman North. American, Inc.*, 64 Fed. Appx. 416, *1 (5th Cir. 2003). Remand is proper if at any time the Court lacks subject matter jurisdiction. *See* 28 U.S.C. § 1447(c).

Because Cephas seeks to substitute Menard, Caldwell, Brazil, and Pouncy for the fictitious "Jane Doe" named in her original Petition, Rule 15 applies in this case. See *Doleac v. Michalson,* 264 F.3d 470, 475-76 (5th Cir. 2001); *Wells v. Medtronic, Inc.,* 171 F. Supp. 493, 505 (E.D. La. 2016).

Rule 15 of the Federal Rules of Civil Procedure mandates that leave to amend "be freely given when justice so requires." Fed. R. Civ. P. 15(a). Determining when justice requires permission to amend rests within the discretion of the trial court.[2] *See Bisby v. Garza*, 2008 WL 465320, at *1 (S.D. Tex. 2008) (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 330 (1971); *Nilsen v. City of Moss Point, Miss.,* 621 F.2d 117, 122 (5th Cir. 1980)). However, joinder of additional defendants in an action requires permission from the court, and the defendants must be involved

---

[2] A party may amend its pleading once as a matter of course at any time before a responsive pleading is served. *See Aguilar v. Texas Department of Criminal Justice*, 160 F.3d 1052, 1053 (5th Cir. 1998) (citing Fed. R. Civ. P. 15(a)).

5

in the same transaction or occurrence, with common questions of law or fact, as the originally named defendants. *See* Fed. R. Civ. P. Rule 20.

Under 28 U.S.C. § 1447(e), "[i]f after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court."[3] In determining whether to allow joinder of a party under § 1447(e), a district court examines the factors set out in *Hensgens v. Deere & Co.*, 833 F.2d 1179, 1182 (5th Cir. 1987). These factors include: (1) the extent to which the purpose of the amendment is to defeat federal jurisdiction; (2) whether plaintiff has been dilatory in asking for amendment; (3) whether plaintiff will be significantly injured if amendment is not allowed; and (4) any other factors bearing on the equities. *See id.; see also Moore v. Manns,* 732 F.3d 454, 456 (5th Cir. 2013); *Doleac v. Michalson,* 264 F.3d 470, 474 (5th Cir. 2001).

NNRC contends Cephas is adding the four NNRC employees in an effort to destroy diversity. Cephas counters that she included "Jane Doe" as a placeholder in her complaint for unknown "administration, staff, and medical providers" who caused or contributed to her injuries because she always intended to add them as defendants.

---

[3] "Regardless of whether a non-diverse party is joined after removal under Fed. R. Civ. P. 19 or substituted for a John Doe under Rule 15, once the party is properly present in the action, diversity is destroyed and subject matter jurisdiction is extinguished." *Doleac v. Michalson*, 264 F.3d 470, 475 (5th Cir. 2001) ("Section 1447(e)…direct[s] remand if the district court permits joinder of a defendant whose citizenship destroys subject matter jurisdiction.").

Because Cephas shows that, even before removal, she intended to add the new Defendants, this factor favors leave.

Cephas asserts that she has not been dilatory in seeking to amend. Cephas's original petition was filed October 31, 2023; the case was removed six weeks later; NNRC filed its Motion for Summary Judgment (with Menard's affidavit) a month later; and Cephas filed her Motion to Amend three weeks after that, to add Menard and three others as Defendants. Cephas contends she became aware of Menard's name from her affidavit in NNRC's Motion for Summary Judgment. Cephas further contends she obtained the nearly 10,000 pages of medical records from NNRC in two waves. Those records took time to review in order to identify Caldwell, Brazil, and Pouncy as the persons responsible for Cephas's care. NNRC contends those records were "available" to Cephas three months before suit was filed. However, NNRC does not assert that Cephas's attorney had them then (or that Cephas had an attorney then). Because it does not appear that Cephas has been dilatory in filing her Motion to Amend, this factor favors leave.

NNRC argues that Cephas "will not be significantly injured" if amendment is denied because NNRC will be vicariously liable for any negligence by the proposed Defendants, and Cephas' damages are capped under the LMMA at $500,000.

7

Cephas points out that not all of her claims will necessarily fall under the LMMA. Some claims will fall under the LMMA,[4] and others under the NHRBRA and general tort law.[5] "[T]he LMMA and its limitations on tort liability apply only to claims 'arising from medical malpractice;' all other tort liability on the part of the qualified health care provider is governed by general tort law." *Davis v. Hillview Nursing Home, Inc.*, 23-0523 (La. App. 4 Cir. 9/25/23), 372 So. 3d 849, 852 (citing *Watson*, 203 So. 3d at 321, and *Burandt v Pendleton Memorial Methodist Hospital,* 13-0049 (La. App. 4th Cir. 8/7/13), 123 So. 3d 236, 241, *writ den.*, 13-2139 (La.

---

[4] "Allegations against a nursing home for failure to provide adequate medication and medical care fit within the ambit of medical malpractice actions under La. R.S. 9:2794 and other relevant Louisiana medical malpractice statutes." *Hendrix v. Maison Orleans I, L.L.C.*, 11-1349 (La. App. 4 Cir. 9/26/12), 101 So. 3d 1013, 1018, *writ den.,* 12-2426 (La. 1/11/13), 107 So.3d 616 (citing *Mineo v. Underwriters at Lloyds, London,* 07–0514 (La. App. 4 Cir. 10/22/08), 997 So. 2d 187, 192).

[5] As discussed in *Watson v. Woldenberg Village, Inc.*, 16-0159 (La. App. 4 Cir. 10/5/16), 203 So. 3d 317, 321, *writ den.,* 16-1964 (La. 12/16/16), 211 So. 3d 1168, not all claims fit within the scope of the LMMA:

> Nursing homes were brought into the ambit of the LMMA as qualified healthcare providers in 2001. 2001 La. Acts, No. 108. At that time, nursing home residents also had a private right of action to recover actual damages for violations of the Nursing Home Bill of Rights ("NHBR"), La. R.S. 40:2010.9. A claimant could maintain separate actions under both the LMMA and the NHBR, and only those sounding in malpractice were subject to a medical review panel. *See Hendrix v. Maison Orleans I, L.L.C.*, 11–1349 (La. App. 4th Cir. 9/26/12), 101 So. 3d 1013, 1022. However, in 2003, the legislature amended the NHBR to eliminate a claimant's right to seek monetary damages, limiting a claimant's remedies under the NHBR to injunctive relief. 2003 La. Acts, No. 506. Thus, as in the present case, claims brought for negligence by nursing home residents that do not sound in malpractice are considered under general negligence law.

11/22/13), 126 So. 3d 488). Because not all of Cephas's claims fall within the scope of the LMMA,[6] this factor favors leave.

NNRC also asserts that Cephas does not assert any claims against Menard, Caldwell, Brazil, and Pouncy. However, Cephas's proposed Supplemental and Amended Complaint asserts several claims against them regarding the care and treatment she received at NNRC, for which Cephas contends they were responsible. ECF No. 21-5 at ¶¶ 7-17.

Because each of the *Hensgens* factors favor amendment of the Complaint, Cephas's Motion to Amend (ECF No. 21) should be granted.

Further, because addition of the non-diverse Defendants will destroy diversity, this case should be remanded to the Louisiana 10th Judicial District Court in Natchitoches Parish. *See* 28 U.S.C. § 1447(e); *Doleac*, 264 F.3d at 477.

### III. Conclusion

IT IS RECOMMENDED that Cephas's Motion to Amend Complaint (ECF No. 21) be GRANTED and this case REMANDED to the Louisiana 10th Judicial District Court in Natchitoches Parish.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar

---

[6] Some claims made by Cephas that do not fall within the scope of the LMMA are: failure to provide privacy in treatment and caring for Plaintiff's personal needs; failure to treat Cephas courteously, fairly, and with dignity; failure to adequately staff the NNRC; and failure to properly supervise and train employees.

9

days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  No other briefs (such as supplemental objections, reply briefs, etc.) may be filed.  Providing a courtesy copy of the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in chambers in Alexandria, Louisiana, this __15th__ day of August 2024.

_____
Joseph H.L. Perez-Montes
United States Magistrate Judge